IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERTA A. BONICA, ) | CASE NO. 1:13CV00957 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff Roberta A. Bonica ("Plaintiff" or "Bonica") *pro se* seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI"). Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the Commissioner's decision should be **AFFIRMED.**

I.  Procedural History

A.  **Current Application**

Bonica filed an application for SSI on May 24, 2010, alleging a disability onset date of March 8, 2001. Tr. 181. She alleged disability based on chronic stomach pain and depression. Tr. 196. Bonica's application was denied by the state agency initially and on reconsideration. Tr. 98-99. On March 13, 2012, a hearing was held before Administrative Law Judge ("ALJ") Thomas M. Randazzo. Tr. 28-63. At the hearing Plaintiff waived her right to counsel. Tr. 30-31.

In his March 29, 2012, decision, the ALJ determined that Bonica was able to perform jobs that exist in significant numbers in the national economy given her residual functional capacity ("RFC"), i.e., she was not disabled. Tr. 9-27. Bonica requested review of the ALJ's decision by the Appeals Council. Tr. 6-7. On February 25, 2013, the Appeals Council denied Bonica's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4.

**B. Prior Applications**

Bonica filed prior applications for SSI and Disability Insurance Benefits ("DIB") in February 1997. Tr. 12. Both applications were denied initially and upon reconsideration. Id. On October 6, 1998, a hearing was held before ALJ Nelson Karl. Id. In November 1998, ALJ Karl issued a decision finding that Bonica was not disabled under the Social Security Act. Id. Bonica sought review of that decision. Id. The Appeals Council granted her request for review and ultimately remanded the claim for further reconsideration. Id. ALJ Alfred Lucas held hearings in this matter on December 2, 2000, and February 2, 2001, and, on March 7, 2001, issued a decision finding that Bonica was not disabled. Id. Bonica sought review of that decision. Id. The Appeals Council denied review. Id. Bonica then appealed the decision to the United States District Court for the Northern District of Ohio. Id. On January 28, 2004, the District Court remanded the claim for further consideration. Id. (Case No. 1:01 CV 2500, Doc. 24, J. Baughman). ALJ Lucas held a hearing on this matter on November 12, 2004, and issued a decision finding Bonica was not disabled under the Social Security Act on February 24, 2005. Tr. 113-122. Bonica sought review of that decision, which the Appeals Council denied. Id. Bonica then returned to the District Court. Id. On June 21, 2006, the District Court upheld ALJ Lucas' decision in part and remanded in part for reconsideration of a treating physician opinion

that Bonica had post-surgical complications for a period after her 1996 and 1997 surgeries. Id. (Case No. 1:05 CV 1648, Doc. 26, p. 4., J. Baughman). Upon remand, on November 16, 2006, ALJ Thomas Ciccolini issued a decision finding that Bonica was disabled for a closed period, beginning January 1, 1996, and ending on September 30, 1997. Tr. 77-85.

## II. Evidence

### A. Personal and Vocational Evidence

Bonica was born in 1957 and was 52 at the time her SSI application was filed. Tr. 21. Bonica completed high school as well as the equivalent of three years of college at Cleveland State University. Tr. 280. She worked in the past as an accountant/controller and a barmaid. Tr. 33, 280.

### B. Pertinent Medical History

#### 1. Evidence prior to Bonica's May 10, 2010, application

Bonica underwent removal of a left endometrioma[1] and left ovarian cyst and tube on July 1, 1996. Tr. 83. After continued pelvic pain, in 1997 Bonica underwent a total hysterectomy and removal of adhesions. Tr. 83, 119. The medical records do not reflect any further surgeries. Tr. 119.

On August 17, 2009, Richard Zinni, D.O., Bonica's primary care physician, reported that Plaintiff's diagnoses were general osteoarthritis, lumbago, and benign hypertension. Tr. 269. On January 19, 2010, Dr. Zinni treated Bonica for a left foot injury. Tr. 274. Dr. Zinni reported that Bonica's only active medication was Chantix. Id.

---

[1] Endometrioma: a solitary, non-neoplastic mass containing endometrial tissue. *See* Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at p. 618.

3

### 2. Evidence since Bonica's May 10, 2010, application

On May 24, 2010, Bonica presented to Dr. Zinni due to complaints of abdominal discomfort and a request for a letter for Medicaid.  Tr. 274.  Dr. Zinni diagnosed abdominal pain and irritable bowel syndrome ("IBS").  Tr. 275.  Dr. Zinni prescribed Bentyl for the IBS.  Id.  On July 6, 2010, Bonica returned to Dr. Zinni for treatment of an ankle fracture.  Tr. 276.  She was referred to an orthopedist for follow-up.  Id.

### C. Medical Opinion Evidence

#### 1. Plaintiff's Treating Sources

On July 5, 2008, Melanie D. Tyler, M.D., Bonica's physician at that time, wrote a letter indicating that Bonica had been under her care for chronic pelvic and hip pain, for which Dr. Tyler had prescribed a variety of medications.  Tr. 262.  Dr. Tyler reported that Bonica's symptoms were exacerbated by pain-related sleep interruptions and that she had developed depression.  Id.  Dr. Tyler opined that Bonica "is not currently employable."  Id.

On June 1, 2010, Dr. Zinni drafted a letter stating that Bonica has been under his care for chronic pelvic pain and hip pain, developed after pelvic surgery.  Tr. 264.  Dr. Zinni stated that Bonica has continued treatment with his office, as well as with Rheumatology and Gynecology specialists.  Id.  Dr. Zinni opined that Bonica "is presently unemployable."  Id.

#### 2. Consultative Examinations

On October 28, 2010, Thomas F. Zeck, Ph.D., performed a psychological consultative evaluation.  Tr. 279.  Dr. Zeck diagnosed Bonica with major depressive disorder and rated her

Global Assessment of Functioning (GAF) score at 58.[2] Tr. 283. Dr. Zeck opined that Bonica's ability to relate to others and to withstand stress and pressures of day-to-day work was moderately impaired; her ability to understand, remember, and follow instructions was average; and her ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks was unimpaired. Id.

On June 9, 2011, Eulogio Sioson, M.D., performed a consultative physical examination. Tr. 284. Dr. Sioson reported that Bonica had "tenderness in the lower abdomen-surgical scar." Tr. 285. Dr. Sioson diagnosed Bonica with hypertension, pelvic pains of unclear etiology – history of endometriosis, joint pains, and mental disorder (noting that she "was not emotionally labile and was able to maintain attention and concentration."). Id. Dr. Sioson opined that "if one considers limitation of range of motion from pain and above findings, work-related activities would be limited to light work." Id.

3.      **State Agency Opinions**

On July 9, 2010, John Waddell, Ph.D., a stage agency psychologist, reviewed Bonica's case file and opined that she had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in concentration, persistence, or pace. Tr. 93. Dr. Waddell opined that Bonica had the mental RFC to perform static tasks with little or no interaction with others. Tr. 95.

---

[2] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses. See American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

On March 29, 2011, Paul Tangeman, Ph.D., a state agency psychologist, stated that, although Bonica alleged a worsening of her condition, the evidence was insufficient to support her claim. Tr. 106.

On July 1, 2011, Kouroush Golestany, M.D., state agency physician, opined that Bonica was capable of performing light work that involved lifting and carrying only 20 pounds occasionally and 10 pounds frequently; only occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; no more than frequent balancing, stooping, kneeling, crouching, and crawling. Tr. 108-109.

### D. Testimonial Evidence

#### 1. Bonica's Testimony

At the administrative hearing, Bonica waived her right to counsel and testified that she is unable to work due to "pain syndrome." Tr. 34. Bonica testified that her husband helps her with most of her basic hygiene, performs most of the household chores, and does the shopping. Tr. 37-38. Bonica also testified that she was unable to drive due to her pain medications which include: Darvocet, Ultram, and Flexeril. Id. She stated that she hasn't driven since 2005 and hasn't gone shopping in 10 years. Tr. 39-40. Bonica testified that she hasn't had any medical treatment in at least a year because she can't afford her Medicaid spend-down amount. Tr. 43. Bonica further testified that she has pain in her wrists due to rheumatoid arthritis. Tr. 45.

Bonica testified that she has problems with concentration. Tr. 35, 44. She stated that she gets along well with family, friends, and her husband. Tr. 41.

### 2. Vocational Expert's Testimony

Vocational Expert Kevin Yi[3] ("VE") testified at the hearing.  Tr. 52-55, 59-62.  The VE testified that Bonica's past relevant work as a barmaid was semiskilled and performed at a light exertional level.  Tr. 53-54.  The ALJ then asked the VE to consider a hypothetical individual of Bonica's age, education, and work experience who can perform work at a light level; lifting up to 20 pounds occasionally and 10 pounds frequently; standing and walking for about six hours; sitting for up to six hours in an eight-hour workday with normal breaks; occasionally climbing ramps and stairs and occasionally climbing ladders, ropes, and scaffolds; frequently balancing, stooping, kneeling, crouching, and crawling; avoiding all exposure to hazardous machinery and unprotected heights; limited to tasks that are simple, routine, and involve only superficial interaction with coworkers and the public; and precluded from tasks that involve high production quotas, strict time requirements, arbitration, negotiation, or confrontation.  Tr. 54.  The VE testified that such a hypothetical individual could not perform Bonica's past work as a barmaid.  Tr. 54-55.  However, the VE testified that such an individual could perform work as a mail clerk (60,000 positions nationally, 2,500 positions in Ohio), an order caller (300,000 positions nationally, 16,000 positions in Ohio), and as a production marker (150,000 positions nationally, 7,000 positions in Ohio).  Tr. 59-60.

The ALJ then asked the VE to consider a second hypothetical individual with the following addition from the first:  the second individual would require two extra breaks of 15 minute duration.  Tr. 60.  The VE testified that there would be no jobs without employer accommodations for such an individual.  Id.

The ALJ then asked the VE to consider a third hypothetical individual who has the same qualities as the first hypothetical individual but would be able to work at a medium exertional

---

[3] Spelled as Yee in the hearing transcript (Tr. 52) and as Yi in the ALJ's decision (Tr. 12).

level (defined as "lifting no more than 50 pounds occasionally, carrying up to 25 pounds frequently; standing and walking for six hours, sitting for up to six hours in an eight-hour workday with normal breaks") rather than a light exertional level. Tr. 60-61. The VE testified that such an individual could perform work as a laundry worker (88,000 positions nationally, 3,000 positions in Ohio) and a kitchen helper (200,000 positions nationally, 7,000 positions in Ohio). Tr. 60-62.

### III. Standard for Disability

#### A. Initial Disability Determination

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making an initial determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

8

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In his March 29, 2012, decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since May 24, 2010, the application date.  Tr. 15.

2. The claimant has the following severe impairments: degenerative disc disease of the spine, major depressive disorder, and chronic pain disorder. Tr. 15.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).  Tr. 16.

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), with restrictions. Specifically, she can lift and carry up to 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, she can stand and/or walk for six hours and sit for six hours, with normal breaks. She can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. She can frequently balance, stoop, kneel, crouch, and crawl. She cannot work in proximity to hazardous machinery or unprotected heights. She is limited to simple, routine tasks with no high production quotas or strict time requirements. She is precluded from tasks that involve arbitration, negotiation, or confrontation. She is limited to tasks that involve superficial interaction with co-workers and the public. Tr. 17.

5. The claimant is unable to perform any past relevant work. Tr. 21.

6. The claimant was born in 1957 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. Tr. 21.

7. The claimant has at least a high school education and is able to communicate in English. Tr. 21.

8. The claimant does not have acquired work skills transferable to other work within the residual functional capacity. Tr. 21.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform. Tr. 21.

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 24, 2010, the date the application was filed. Tr. 22.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council declined review on February 25, 2013. Tr. 1-4.

**V. Parties' Arguments**

On October 17, 2013, Plaintiff filed her Brief on the Merits. Doc. 15. In her brief, Plaintiff does not identify any particular error in the ALJ's decision.[4] Id. Instead, Plaintiff asserts that her disabling conditions have not improved since her previous award of damages for a closed-end period in 1996 and 1997. Doc. 15, p. 1. Liberally construing Plaintiff's Brief, the Court interprets it to be challenging whether substantial evidence supports the ALJ's decision. On November 14, 2013, the Commissioner filed her Brief on the Merits and argued that substantial evidence supports the ALJ's finding that Bonica was not disabled. Doc. 16, p. 2. Because Plaintiff is proceeding *pro se,* the Court has carefully reviewed the ALJ's decision to determine whether substantial evidence supports those findings.

**VI. Law & Analysis**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*,

---

[4] Although *pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings, *Boswell v. Mayer,* 169 F.3d 384, 387 (6th Cir.1999), this Court is not required to make a *pro se* plaintiff's arguments for her. Such a mandate would "require the courts to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would ... transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Troth v. Comm'r of Soc. Sec.*, 3:11-CV-272, 2012 WL 1185999 (S.D. Ohio Apr. 9, 2012) (quoting *Crawford v. Crestar Foods,* No. 98–3144, 2000 U.S.App. LEXIS 6695, at *2, 2000 WL 377349 (6th Cir. Apr. 6, 2000)).

11

nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### The ALJ's disability determination is supported by substantial evidence

The ALJ found that Bonica was not disabled since May 24, 2010, the date on which she filed her SSI application. Tr. 22. The ALJ determined that Bonica had the following severe impairments: degenerative disc disease of the spine, major depressive disorder, and chronic pain disorder. Tr. 15. The ALJ found that Bonica had the residual functional capacity to perform light work but she was limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking for six hours and sitting for six hours in an eight-hour workday; occasionally climbing ladders, ropes, scaffolds, ramps, and stairs; frequently balancing, stooping, kneeling, crouching, and crawling; no work in proximity to hazardous machinery or unprotected heights; simple, routine tasks with no high production quotas or strict time requirements; tasks that involve superficial interaction with co-workers and the public; and she was precluded from tasks that involve arbitration, negotiation, or confrontation. Tr. 17. Based on the VE's testimony, the ALJ determined that Bonica was capable of performing jobs that existed in significant numbers in the national economy and, therefore, was not disabled. Tr. 21-22.

The Commissioner asserts that substantial evidence supports the ALJ's finding that Bonica was not disabled. Doc. 16, p. 9. The Commissioner is correct.

In finding that Bonica was not disabled, the ALJ noted that the record did not contain new and material evidence establishing a change in her condition since the date of ALJ Lucas's February 24, 2005, decision. Tr. 13, 113-122. ALJ Lucas held that Bonica's severe impairments included chronic pain disorder and depression. Tr. 13. ALJ Lucas found that Bonica retained

the capacity for light work with the following restrictions: no climbing of ladders, ropes or scaffolds; only occasionally climbing of stairs; only occasional bending; no exposure to unprotected heights, moving machinery, or workplace hazards; and no more than simple, routine, low-stress tasks with no high production quotas, intense interpersonal interactions, or confrontational tasks. Tr. 13, 120. Pursuant to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997), "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of the previous ALJ."

Evidence post-dating ALJ Lucas's decision does not demonstrate any significant change in Bonica's condition. Bonica's treating physicians, Dr. Tyler and Dr. Zinni, both submitted opinions of disability after ALJ Lucas's decision, opining that Bonica was unemployable. Tr. 262, 264. However, ALJ Randazzo assigned little weight to these opinions.

Under the treating physician rule, an ALJ must give the opinion of a treating source controlling weight if he finds the opinion well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *Wilson*, 378 F.3d at 544. In deciding the weight given, the ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion. *Bowen v.*

13

*Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is not obliged to explain the weight afforded to each and every factor that might pertain to the medical source opinions. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

The ALJ stated good reasons for discounting the opinions of Dr. Tyler and Dr. Zinni. The ALJ discounted the opinions of Dr. Tyler and Dr. Zinni under the factors of supportability and consistency. The ALJ found that the opinions were conclusory. Tr. 18. The ALJ also correctly pointed out that the record does not contain treatment notes or objective findings that support those opinions. Id. The treatment notes contain only a single mention of abdominal discomfort in May 2010. Tr. 274. As to the issue of employability, the ALJ correctly asserted that the issue of disability is an administrative finding reserved solely for the Commissioner. Tr. 18, *See* 20 C.F.R. § 416.927(d)(1). Thus, the ALJ stated good reasons for discounting the opinions of Drs. Tyler and Zinni. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (finding that an ALJ provided good reasons for discounting treating physician opinion where the ALJ's stated reason was brief but reached several of the factors an ALJ must consider when determining what weight to give non-controlling opinion).

Furthermore, the ALJ gave weight to various consultative and reviewing state agency physicians who found Bonica capable of performed a reduced range of work. As to her psychological impairments, the ALJ gave weight to the opinions of psychological consultants Dr. Waddell and Dr. Tangeman who determined that Bonica retains the capacity for static tasks with little interaction with others. Tr. 19. The ALJ's determination is also consistent with the opinion of Dr. Zeck, psychological consultative examiner, who found that Bonica's retains the ability to perform simple, repetitive tasks. Tr. 283.

14

As to her physical impairments, the ALJ gave weight to the opinion of medical consultant Dr. Golestany who determined that Bonica retains the capacity for light work with only occasional climbing and no more than frequent balancing, stooping, kneeling, crouching, and crawling. Id. Physical consultative examiner Dr. Siosin also opined that Bonica retains the capacity for light work. Tr. 285.

The ALJ also considered Bonica's subjective complaints and found that her allegations regarding the severity of her symptoms were not credible due to "inconsistencies in statements, lack of treatment, and activities consistent with the ability to perform work at the light exertional level with the restrictions [listed in the RFC]." Tr. 19. The ALJ's credibility assessment is supported by the record. Bonica made several inconsistent statements. She testified that she had not driven since 2005 and had not gone shopping in 10 years; however, during her 2010 examination with Dr. Zeck, Bonica reported that she drove herself to his office and was charged with shoplifting from a grocery store in 2010. Tr. 19-20, 279-280. Bonica also testified that she needed help from her husband with bathing and tying her shoes but she reported to Dr. Siosin in June 2011 that she was able to do those things herself. Tr. 20, 284.

The ALJ's credibility determinations are entitled to great deference because the ALJ had the "unique opportunity to observe" the witness's demeanor while testifying. *Buxton,* 246 F.3d at 773; *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 476; *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531. On appeal, a reviewing court is "limited to evaluating whether or not the ALJ's explanations for [discrediting the witness] are reasonable and supported by substantial evidence in the record." *Jones,* 336 F.3d at 476. The ALJ's explanations for discrediting Bonica are reasonable and supported by substantial evidence in the record.

15

Based on all of the above, substantial evidence supports the ALJ's decision that Bonica is not disabled.

## VII.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED.**

Dated:  April 21, 2014

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).